## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## GULFPORT DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Condor Insurance Limited (In Official | ) | Case No. 07-51045-ERG-15 |
| Liquidation) | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |
| Richard Fogerty and William Tacon in their | ) | |
| Capacity as the Joint Official Liquidators of | ) | |
| Condor Insurance Limited, | ) | |
| | ) | |
| Plaintiffs. | ) | |
| v. | ) | Adversary No. 07-_____ |
| | ) | |
| Condor Guaranty, Inc. and | ) | |
| Petroquest Resources, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORIGINAL COMPLAINT

Richard Fogerty and William Tacon (the "Plaintiffs") as the duly appointed Joint Official Liquidators of Condor Insurance Limited ("Condor Insurance"), file this Original Complaint against Condor Guaranty, Inc. ("Condor Guaranty") and Petroquest Resources, Inc. ("Petroquest"), and would respectfully show the Court as follows:

## I. SUMMARY

In late 2006 through early 2007, Condor Insurance transferred substantially all of its assets and its business to Condor Guaranty through a series of transactions (collectively the "Transfer"). The Transfer put those assets beyond the reach of Condor Insurance's creditors. In

fact, it appears that Condor Guaranty was created in November 2006 by the president of Condor Insurance for this very purpose.

Upon information and belief, the Transfer occurred while Condor Insurance was the subject of a petition for winding up in the Eastern Caribbean Supreme Court in the High Court of Justice, St. Christopher and Nevis, Nevis Circuit (the "Nevis Court"). Moreover, prior to the formation of Condor Guaranty and continuing up until the time of the Transfer, Condor Insurance was facing multiple large judgments and was not able to pay its debts as they came due. Condor Insurance and Condor Guaranty have common directors and officers, the same business and the same assets. The only attribute of Condor Insurance not transferred to the phoenix company, Condor Guaranty, was Condor Insurance's staggering list of debts.

The Plaintiffs seek a judgment against Condor Guaranty under Nevis law for the return of all of Condor Insurance's property that was wrongfully transferred to Condor Guaranty, including, but not limited to, the following assets: 3 million shares of common stock in Petroquest Resources, Inc., 2 million shares of Preferred C Stock in Petroquest, 18 million shares in Ashby Corporation, $1.7 million cash, a $500,000 account receivable from New LTV, a $650,000 note receivable from Gold Rock Creek and Stockton Fuller & Co. The Plaintiffs also seek a judgment requiring Petroquest to return the 500,000 shares of Petroquest Preferred C Stock returned to the Petroquest treasury in January 2007.

## II. PARTIES

1. Plaintiffs are the Joint Official Liquidators of Condor Insurance Limited (In Official Liquidation) pursuant to an order of the Nevis Court dated May 18, 2007. This Court has recognized the Nevis proceeding as a foreign main proceeding and has

entrusted the administration, realization and distribution of Condor Insurance's assets within the United States to the Plaintiffs.

2.   Defendant, Condor Guaranty, Inc., is a Bahamian corporation.  It may be served with the Original Complaint and Summons at 15 Lillian Court, Lucaya, Freeport, Grand Bahama and at its United States business address of 1145 Robinson Avenue, Ocean Springs, Mississippi 39564.

3.   Defendant, Petroquest Resources, Inc., is a Nevada Corporation.  It may be served with the Original Complaint and Summons through its registered agent at Laughlin Associates, Inc., 2533 North Carson Street, Carson City, 89706 and at its usual place of business, One Arlington Center, 1112 East Copeland Road, Suite 420, Arlington, Texas 66011.

### III. JURISDICTION AND VENUE

4.   This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference in this District.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

### IV. BACKGROUND FACTS

5.   Condor Insurance is a Nevis corporation organized under the laws of St. Christopher and Nevis. Condor Insurance is no longer operating, but was primarily involved in the reinsurance business and issued special types of financial guarantees and surety bonds.

**The Nevis Proceeding and the Chapter 15 Case**

6. During 2006, Condor Insurance was the subject of multiple creditor lawsuits and collection efforts, and its ability to continue in business was questionable.

7. On September 11, 2006, Infineon Technologies AG ("Infineon"), a judgment creditor of Condor Insurance, sought permission from the Nevis Court to present a winding up petition against Condor Insurance. The Nevis Court granted Infineon permission on November 24, 2006.

8. On November 27, 2006, Infineon presented a winding up petition against Condor in the Nevis Court.

9. As of November 27, 2006, in addition to Infineon's outstanding judgment against Condor Insurance of EUR 1,567,768.14 plus GBP 15,000, Condor Insurance had many other judgment creditors, including but not limited to, the following persons or entities: (a) DDD LLC and Zebra Technologies Europe Ltd. (awarded a judgment of EUR 11,244,460.01 on January 19, 2006); (b) William R. Moody and Stanley L. Miller (awarded a judgment of USD 2,700,000 on February 20, 2006); (c) AVX Ltd (awarded a judgment of EUR 601,274.17 on February 17, 2006); (d) Vicor Corporation (awarded a judgment of USD 292,766.94 on March 17, 2006); (e) VIL Holdings Ltd (awarded a judgment of GBP 95,078.89 on September 11, 2006); (f) Stafford Holdings Ltd (awarded a judgment of GBP 95,078.89 on September 11, 2006); and (g) Charles Skinner (awarded a judgment of GBP 185,314.02 on September 11, 2006).

10. On May 18, 2007, the Honorable Justice Leigertwood-Octave of the Nevis Court ordered that Condor be wound up by the Nevis Court under section 377 of the Companies Ordinance 1999 (the "Winding-up Order").

11. The Nevis Court appointed the Foreign Representatives, Richard Fogerty of Kroll (Cayman) Limited and William Tacon of Kroll (BVI) Limited, as the joint official liquidators of Condor Insurance.  The Foreign Representatives have been empowered by the Nevis Court to investigate Condor Insurance's assets and to take all such assets into their custody for the benefit of Condor Insurance's creditors.

12. On July 26, 2007, the Foreign Representatives filed a chapter 15 petition commencing a chapter 15 case ancillary to the Foreign Proceeding and seeking recognition of the Foreign Proceeding as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code.

13. On August 2, 2007, upon the request of the Foreign Representatives and after notice and hearing, this Court entered a preliminary injunction to protect Condor Insurance and its assets located within the United States.  As part of that order, the Court also enjoined Condor Guaranty from further transferring certain of the assets that are the subject of this complaint.

14. On August 21, 2007, this Court entered an Order recognizing the Foreign Proceeding as a foreign main proceeding and entrusting the administration, realization and distribution of Condor Insurance's assets within the United States to the Plaintiffs.

07-05049-NPO  Dkt 1  Filed 11/20/07  Entered 11/20/07 16:35:14  Page 6 of 17

**The Transfer of Assets From Condor Insurance to Condor Guaranty**

15. At all relevant times, Harvey Milam has acted as president of Condor Insurance. Some of its other officers, directors and employees included: Tyghe Williams, as Preferred Shareholder Liaison; Joycelyn Milam as Vice-President; Albert Milam as Vice-President, Hope Milam in communications; Brad Cates as Chief Financial Officer; Daniel MacMullin as director; and Tracy Brandy as office manager. This list is strikingly similar to the list of officers, directors and employees for Condor Guaranty.

16. Milam is also the President of Condor Guaranty. Its other officers, directors and employees include: Albert Milam as Vice President; Brad Cates as Secretary and Treasurer; John P. Lindsay as Secretary; Hope Alexis Milam as Director; Tracy Brandy as Director; Daniel MacMullin as Director; and Tyghe Williams as Asset Manager.

17. According to its 2005 audited balance sheet, Condor Insurance had over $313 million in assets. A copy of the 2005 financial statements is attached hereto as **Exhibit A**. Of that amount, the financial statement noted that approximately $304 million consisted of holdings in U.S. based companies and securities publicly traded on U.S. exchanges.

18. Upon being questioned by the Plaintiffs about the whereabouts of Condor Insurance's assets, Milam provided a "Portfolio Transfer (July-December)" (the "Portfolio Transfer"), and explained that virtually all of Condor Insurance's assets and business had been transferred to Condor Guaranty. A copy of the Portfolio Transfer is attached hereto as **Exhibit B**. Condor Guaranty also purported to assume

contingent liabilities consisting of certain insurance policies previously issued by Condor Insurance, however, Plaintiffs believe that Condor Guaranty did not pay fair value for assets it received from Condor Insurance.

19. At all relevant times, Condor Insurance was insolvent.

20. Condor Guaranty was incorporated on November 8, 2006 pursuant to the International Business Companies Act of the Commonwealth of the Bahamas as an International Business Company. Condor Guaranty is also reportedly involved in the reinsurance business and issues special types of financial guarantees and surety bonds. Nevertheless, despite being organized under Bahamian law, Condor Guaranty does not appear to be a registered insurance company in the Bahamas.

21. Condor Guaranty opened bank accounts at United Bank on November 15, 2006, and may have also opened accounts at other banks. Upon information and belief, Condor Insurance's funds were transferred to Condor Guaranty, either directly or indirectly, shortly after these accounts were opened, and possibly, in part or in whole, after November 27, 2006.

22. On or about January 17, 2007, after the date of presentation of the winding up petition in Nevis on November 27, 2006, Petroquest directed that the share certificate for 2,500,000 shares of Series C Preferred Stock in Petroquest that had been issued to Condor Insurance be cancelled and that the shares be returned to Treasury, with 2,000,000 shares of Preferred C Stock being simultaneously reissued to Condor Guaranty. A copy of the letter directing these transactions is attached as **Exhibit C**. Additionally, according to the Portfolio Transfer, 3,000,000 shares of Petroquest common stock were apparently transferred to Condor Guaranty.

23. Condor Guaranty's available balance sheet, dated as of December 31, 2006, indicates that all of its assets came from Condor Insurance. A copy of the financial statements from Condor Guaranty's website are attached hereto as **Exhibit D**.

24. Upon information and belief, Condor Guaranty is currently operating as an insurer from The Bahamas. The insurance business is in a highly regulated industry and there are stringent requirements for the conduct of this business and for the required asset base for insurers. In order to engage in business as an insurance company which is incorporated in the Bahamas, it appears that Condor Guaranty should be registered with the Registrar of Insurers of the Bahamas, but is not. Attached as **Exhibit E** is a copy of the guidelines on issuance of insurance licenses from the Bahamian government's website. Attached as **Exhibit F** are lists detailing all registered insurers in the Bahamas. Condor Guaranty does not appear on these lists.

25. Additionally, Condor Guaranty's general ledger for September 2007, attached as **Exhibit G**, shows that Condor Guaranty is spending significant amounts on questionable expenses. In particular, it paid $92,728.00 for "Tax Liability for U.S. Residents" in September.

## V. CAUSES OF ACTION

**(Count One—Knowing Receipt of Property Transferred in Violation of Fiduciary Duty Under Nevis Law)**
***(Against Condor Guaranty)***

26. Plaintiffs incorporate herein the factual allegations in paragraphs 1 through 25 of this Complaint.

27. As a matter of Nevis law, where a third party receives property with knowledge of a breach of trust or fiduciary duty in circumstances where it would be unconscionable for the third party to retain the benefit of such receipt, the third party may be taken to hold the property received on constructive trust for the transferor and ordered to account to the transferor for the property received.

28. The directors and officers of Condor Insurance, in their capacity as directors and officers, owed Condor Insurance fiduciary duties, including a duty to act bona fide in the best interests of the company. In circumstances where Condor Insurance was of doubtful solvency or insolvent, that duty required its directors to consider the interests of the creditors *as a whole*.

29. The Transfer to Condor Guaranty was a disposal of assets in breach of that fiduciary duty by Condor Insurance's officers and directors.

30. Milam, as the President of both Condor Guaranty and Condor Insurance and as the person in control, and the person directing mind and will of both entities, knew, and thus Condor Guaranty knew, that Condor Insurance was insolvent and that the Transfer would, and was intended to, leave Condor Insurance without assets to satisfy its creditors. Condor Guaranty thus knowingly received property transferred in breach of fiduciary duty in circumstances such that it was unconscionable for it to retain the benefit of the Transfer.

31. Condor Guaranty is liable as a constructive trustee on the ground of knowing receipt to return the property received, to which Condor Insurance claims

equitable title, and to account to Condor Insurance for all loss and damage suffered by Condor Insurance as a result of the Transfer and any benefit received or acquired by Condor Guaranty as a result of the knowing receipt.

### (Count Two—Dishonest Assistance in Transferring Property in Violation of Fiduciary Duty Under Nevis Law) (*Against Condor Guaranty*)

32. Plaintiffs incorporate herein the factual allegations in Paragraphs 1 through 31 of this Complaint.

33. As a matter of Nevis law, where a third party dishonestly procures or assists in a breach of trust or fiduciary duty by another, the third party will be liable to account for the losses resulting from his assistance.

34. The directors and officers of Condor Insurance, in their capacity as directors and officers, owed Condor Insurance fiduciary duties, including a duty to act bona fide in the best interests of the company. In circumstances where Condor Insurance was of doubtful solvency or insolvent, that duty required its directors to consider the interests of the creditors *as a whole*.

35. The Transfer to Condor Guaranty was a disposal of assets in breach of that fiduciary duty by Condor Insurance's officers and directors.

36. Condor Guaranty assisted the directors and officers of Condor Insurance to effect the Transfer.

37. Condor Guaranty acted dishonestly in assisting the directors and officers of Condor Insurance to effect the Transfer in breach of fiduciary duty. Condor Guaranty's behaviour was not honest by the standards of reasonable and honest people and it realized that by those standards its conduct was dishonest. Condor

Guaranty's dishonesty is apparent, or alternatively is to be implied, from the fact that Milam, as the President of both Condor Guaranty and Condor Insurance and as the person in control, and the person directing mind and will, of both entities, knew, and thus Condor Guaranty knew, that Condor Insurance was insolvent and that the Transfer would, and was intended to, leave Condor Insurance without assets to satisfy its creditors.  Condor Guaranty thus dishonestly assisted in a breach of fiduciary.

38. Condor Guaranty is liable as a constructive trustee on the ground of dishonest assistance to account to Condor Insurance for all loss and damage suffered by Condor Insurance as a result of the Transfer, and to account for profits which have accrued to Condor Guaranty as a result of its assistance.

### (Count Three—Fraudulent Conveyance Under the Statute of Elizabeth 1571)
### (*Against Condor Guaranty*)

39. Plaintiffs incorporate herein the factual allegations in Paragraphs 1 through 38 of this Complaint.

40. The Nevis Statute of Elizabeth 1571 provides "An Act … for the avoiding of .. fraudulent conveyances … which have been and are devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent to delay, hinder or defraud creditors. … [A]ll and every … conveyance of lands, … good and chattels … shall be from henceforth deemed and taken … (only as against that person … whose actions, suits, debts … by such guileful, covinous, or fraudulent devices and practices … are … defrauded) to be clearly and utterly void …".

41. The Transfer was made with the intent to delay, hinder or defraud creditors.  Accordingly, the Transfer is void under Nevis law.

42. Plaintiffs seek a declaration that the Transfer is void, a judgment requiring Condor Guaranty to return all the property it received, and such other relief as the Court thinks fit to restore Condor Insurance to the position it would have been in if the Transfer had not occurred.

**(Count Four—Void Dispositions Under Nevis Law)**
***(Against Condor Guaranty and Petroquest Resources, Inc.)***

43. Plaintiffs incorporate herein the factual allegations in Paragraphs 1 through 42 of this Complaint.

44. In the alternative, and only in the unlikely event the Court does not require Condor Guaranty to return all property it received, both before and after November 27, 2006 from Condor Insurance, Condor Guaranty must return any property received from Condor Insurance after November 27, 2006 in accordance with section 382 of the Companies Ordinance 1999 (Nevis) which provides that "In a winding-up by the court, any disposition of the property of the company, including things in action, and any transfer of shares, or alteration in the status of the members of the company, made after the commencement of the winding-up, is, unless the [High Court in Nevis] otherwise orders, void."

45. In accordance with section 384(2) of the Companies Ordinance 1999, as a matter of Nevis law, "the winding-up of a company is deemed to commence at the time of the presentation of the petition for winding-up." Accordingly, any part of the Transfer made after November 27, 2006, is void.

46. Plaintiffs seek a declaration that any part of the Transfer made after the commencement of the winding up is void.

47. Plaintiffs also seek a judgment requiring Condor Guaranty to return all property, including but not limited to the 3 million common shares of Petroquest stock and the 2 million shares of Petroquest Preferred C Stock, it received in the Transfer after November 27, 2006, and such other relief as the Court thinks fit to restore Condor Insurance to the position it would have been in if the Transfer had not occurred.

48. Plaintiffs also seek a judgment requiring Petroquest to return the remaining 500,000 shares of Petroquest Preferred C Stock returned to the Petroquest treasury pursuant to the instructions set forth in **Exhibit C** which it received after November 27, 2006, and such other relief as the Court thinks fit to restore Condor Insurance to the position it would have been in if the Transfer had not occurred.

### (Count Five—Request For Mandatory Preliminary Injunction Pending Trial on the Merits)
### (*Against Condor Guaranty and Petroquest Resources, Inc.*)

49. Plaintiffs incorporate herein the factual allegations in Paragraphs 1 through 48 of this Complaint.

50. The Plaintiffs seek a mandatory preliminary injunction compelling Condor Guaranty to deposit into the registry of the Court the $1.7 million transferred as a part of the Transfer, and to turnover the 3 million shares of Petroquest common stock it received from Condor Insurance and the 2 million shares of Petroquest Preferred C stock issued to Condor Guaranty in January 2007.

51. Plaintiffs also seek a preliminary injunction preventing Condor Guaranty from transferring any other assets received from Condor Insurance.

52. Plaintiffs also seek a mandatory preliminary injunction compelling Petroquest to turnover the 500,000 shares of Petroquest Preferred C Stock that were returned to treasury in January 2007.

53. Plaintiffs also seek a preliminary injunction enjoining Petroquest from further transferring any of the shares in Petroquest ever held by Condor Insurance.

54. Plaintiffs meet the requirements for the issuance of a mandatory preliminary injunction and for the issuance of a preliminary injunction under FRCP 65 and Bankruptcy Rule 7065.

55. As demonstrated by the facts set forth above, unless a mandatory preliminary injunction is issued immediately, there is a material risk that Condor Guaranty's business patterns will jeopardize the assets it has taken from Condor Insurance. Condor Guaranty appears to be engaging in the insurance business without a license. This, combined with the past failures of Condor Guaranty's principals to conduct business in a profitable manner, pose a risk of immediate and irreparable harm, in particular, the inability to return Condor Insurance's cash. Moreover, cash by its very nature can be difficult to trace and easily dissipates. Likewise, were the Petroquest shares sold to a good faith purchaser, those too would be lost. Accordingly, the Plaintiffs have demonstrated the potential for irreparable harm and hardship to Condor Insurance's creditors.

56. The Plaintiffs can also show a clear and substantial likelihood of success on the merits. To the extent the Transfer occurred after November 27, 2006, it is simply void under Nevis law, and there is no alternative and no defense to return the assets to Condor Insurance. Moreover, it is clear from the undisputed facts and

Milam's admissions that the business and assets of Condor Insurance have been transferred to Condor Guaranty, while Condor Insurance was insolvent and for the purpose of keeping the assets from Condor Insurance's creditors.  The Transfer was a fraudulent transfer, and Condor Guaranty knowingly received Condor Insurance's property, and dishonestly assisted in the transfer of such property, in full knowledge of a breach of the fiduciary duties owed by the directors and officers of Condor Insurance .

57. The balance of hardships weighs in favor of the Condor Insurance estate under these facts.  Condor Insurance has been stripped of its assets.  Condor Guaranty was established by Condor Insurance's own officers for the express purpose of stripping Condor Insurance of its assets and taking those assets for themselves.  Condor Guaranty cannot thus be heard to complain of any hardship, as any "hardship" it may incur would be caused by its own inequitable conduct.

58. Public policy also favors the Condor Insurance estate, because neither the laws of the United States or Nevis favor those who would secrete assets of an insolvent corporation to their own benefit in a phoenix corporation.  Rather, the laws of both nations provide for the avoidance of such transfers and equal treatment of creditors, which policies will be served by the avoidance of these transfers and the issuance of the requested injunctions.

**(Count Six—Request For Attorneys' Fees, Cost and Prejudgment Interest)**
***(Against Condor Guaranty and Petroquest Resources, Inc.)***

59. Plaintiffs incorporate herein the factual allegations in Paragraphs 1 through 58 of this Complaint.

60. Parts 64 and 65 of the Civil Procedure Rules 2000 for the Eastern Caribbean Supreme Court provide for the recovery of legal costs by parties to litigation in the Nevis Court. Plaintiffs also seek attorneys' fees and costs as allowed by applicable law.

61. Plaintiffs also seek prejudgment interest to the extent, and only to the extent, allowed by applicable law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray for a judgment voiding the Transfer and imposing a constructive trust for any property transferred, requiring Condor Guaranty to return any property of Condor Insurance that it has received either directly or indirectly by way of the Transfer, for a mandatory preliminary injunction directing Condor Guaranty to deposit with the registry of the Court the $1.7 million received from Condor Insurance, and to turnover the 2,000,000 of Petroquest Preferred C Stock issued to Condor Guaranty in January 2007 and the 3,000,000 shares of Petroquest common stock, judgment for the deficiency in the event Condor Guaranty is unable to return any of the property included in the Transfers, for mandatory preliminary injunction directing Petroquest to return the 500,000 Petroquest Preferred C shares returned to treasury in January 2007, and for other further legal and equitable relief to which the Plaintiffs show themselves justly entitled.

Dated: Dallas, Texas

November 20, 2007.

Respectfully submitted,

**BAKER & MᶜKENZIE LLP**

Laurie D. Babich
David W. Parham
State Bar No. 15459500
Laurie D. Babich
State Bar No. 00796150
R. Adam Swick
State Bar No. 24051794
2001 Ross Avenue
2300 Trammell Crow Center
Dallas, Texas  75201
Telephone:  (214) 978-3000
Facsimile:  (214) 978-3099
**ATTORNEYS FOR CONDOR INSURANCE
LIMITED, DEBTOR IN A FOREIGN PROCEEDING**

**BYRD & WISER**


s/ Nicholas Van Wiser
State Bar No. 7339
145 Main Street
Biloxi, MS  39530-4333
Telephone:  (228) 432-8123
Facsimile:  (228) 432-7029
**LOCAL COUNSEL FOR CONDOR INSURANCE
LIMITED, DEBTOR IN A FOREIGN PROCEEDING**