## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **CONDOR INSURANCE LIMITED** | |
| **(IN OFFICIAL LIQUIDATION),** | **CASE NO. 07-51045-NPO** |
| | |
| **DEBTOR IN A FOREIGN PROCEEDING.** | **CHAPTER 15** |

| | |
|---|---|
| **RICHARD FOGERTY AND WILLIAM TAÇON** | |
| **IN THEIR CAPACITY AS THE JOINT OFFICIAL** | |
| **LIQUIDATORS OF CONDOR INSURANCE LIMITED** | **PLAINTIFFS** |
| | |
| **VS.** | **ADV. PROC. NO. 07-05049-NPO** |
| | |
| **CONDOR GUARANTY, INC., PETROQUEST** | **DEFENDANTS** |
| **RESOURCES, INC., HARVEY MILAM,** | |
| **BYRON TYGHE WILLIAMS, ROSS N. FULLER,** | |
| **T. ALAN OWEN, INTERCONTINENTAL** | |
| **DEVELOPMENT AND INVESTMENT** | |
| **CORPORATION, GYMNOGYPS MANAGEMENT,** | |
| **INC., AND FINPAC HOLDINGS, INC.** | |

## MEMORANDUM OPINION
### AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST BYRON TYGHE WILLIAMS AND T. ALAN OWEN ON DISHONEST ASSISTANCE CLAIMS OF FOREIGN REPRESENTATIVES OF CONDOR INSURANCE LIMITED

There came on for consideration the Motion for Summary Judgment of the Joint Official

Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams

and T. Alan Owen (the "Motion") (Adv. Dkt. 265)[1] and Brief in Support of Motion for Summary

Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding are cited as "(Adv. Dkt. _____)"; (2) citations to docket entries in the chapter 15 case, Case No. 07-51045-NPO, are cited as "(Bankr. Dkt. _____)".

Against Byron Tyghe Williams and T. Alan Owen (the "Condor Brief") (Adv. Dkt. 266) filed on February 9, 2012, by Richard Fogerty and William Taçon (the "Foreign Representatives"); Byron Tyghe Williams' Response to Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Williams Response") (Adv. Dkt. 287) and Brief in Support of Byron Tyghe Williams' Response to Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Williams Brief") (Adv. Dkt. 288) filed on March 15, 2012, by Byron Tyghe Williams ("Williams"); and T. Alan Owen's Response to Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Owen Response") (Adv. Dkt. 289) and Brief in Support of T. Alan Owen's Response to Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Owen Brief") (Adv. Dkt. 290) filed on March 15, 2012, by T. Alan Owen ("Owen") in the above-styled adversary proceeding (the "Adversary"). On March 28, 2012, the Foreign Representatives filed a Reply to the Responses Filed by Byron Tyghe Williams and T. Alan Owen to the Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Condor Reply") (Adv. Dkt. 294). The Court, being fully advised in the premises, finds that the Motion is well taken and should be granted for the reasons set forth below. Specifically, the Court finds as follows:[2]

_____

[2] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052.

**Jurisdiction**

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).[3]  Notice of the Motion was proper under the circumstances.

**Procedural Issues**

As a threshold matter, the Court must resolve two procedural issues regarding summary judgment proceedings under Local Rule 7056-1 of the Uniform Local Rules of United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi ("Local Rule 7056-1") and Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Rule 7056").  First, the Court must decide whether the Owen Response and the Owen Brief, filed untimely by Owen, and the Williams Response and the nearly identical Williams Brief,[4] also filed untimely by Williams, should be

---

[3] In 2005, chapter 15 of the United States Bankruptcy Code replaced former 11 U.S.C. § 304.  *See* Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, §§ 801, 802(d)(3) (2005).  In a case of first impression, the United States Court of Appeals for the Fifth Circuit in <u>Fogerty v. Petroquest Resources, Inc. (In re Condor)</u>, 601 F.3d 319, 329 (5th Cir. 2010), held that chapter 15 conferred jurisdiction on this Court over the avoidance claims of the Foreign Representatives.

[4] The Williams Response and the Williams Brief were prepared and signed by Williams while he was allegedly acting without the assistance of counsel.  There is no evidence in the record that Williams himself is a licensed attorney.  Owen, on the other hand, is an attorney himself but is not licensed to practice law in the State of Mississippi.  Because the Williams Response and the Williams Brief include a fairly sophisticated legal analysis and because they are nearly identical to the Owen Response and Owen Brief, there is reason to suspect that Owen prepared the Williams Response and the Williams Brief.  When an attorney "prepares documents for filing for a party who would otherwise appear unrepresented in litigation," that attorney engages in "ghostwriting," a practice that violates Federal Rule of Bankruptcy Procedure 9011.  *See* <u>In re Cash Media Sys., Inc.</u>, 326 B.R. 655, 673 (Bankr. S.D. Tex. 2005).  Because the Court has determined for the reasons discussed elsewhere in this Opinion that it will not consider either the Williams Response or the Williams Brief, the Court will not address the "ghostwriting" issue at this time.

considered by the Court in its summary-judgment analysis.  Local Rule 7056-1(3)(B) provides that the "respondent shall file its response and memorandum brief within 21 days of service of the motion for summary judgment and supporting memorandum."  MISS. BANKR. L.R. 7056-1(3)(B).  Rule 9006(f) of the Federal Rules of Bankruptcy Procedure extends the response deadline for an additional three days when service is made by mail.  FED. R. BANKR. P. 9006(f).

The Motion was filed on February 9, 2012, and was served on Williams and Owen by mail on that same date.  (*See* Adv. Dkt. 265).  Accordingly, under Local Rule 7056-1(3)(B) and Rule 9006(f), the deadline for Williams and Owen to respond to the Motion was March 5, 2012.  The Williams Response, Williams Brief, Owen Response, and Owen Brief, however, were not filed until March 15, 2012.

Under Rule 9006(b) of the Federal Rules of Bankruptcy Procedure, the Court in its discretion may accept a late-filed response where the failure to act was the result of excusable neglect.  FED. R. BANKR. P. 9006(b); *see* Woods v. Allied Concord Fin. Corp., 373 F.2d 733, 734 (5th Cir. 1967).  Neither Williams nor Owen, however, has offered any explanation to the Court as to why their responses were filed late.  "Absent an affirmative showing of excusable neglect, a trial court does not abuse its discretion in refusing an untimely proffer." Slaughter v. S. Talc Co., 919 F.2d 304, 307 (5th Cir. 1990) (citation omitted) (interpreting FED. R. CIV. P. 6(b)).   In reviewing the Motion, the Court, therefore, will not consider the late-filed Williams Response, the Williams Brief, the Owen Response, the Owen Brief, or any of the affidavits or exhibits attached thereto.

The second procedural issue that the Court must address as a preliminary matter is the timeliness of the following additional materials attached by the Foreign Representatives to the Condor Reply: (1) the Supplementary Declaration of Tammy Fu in Support of the Reply to the

Responses Filed by Byron Tyghe Williams and T. Alan Owen to the Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Supplementary Fu Declaration") (Adv. Dkt. 294-19) attached as Exhibit 9 to the Condor Reply and (2) the Affidavit of Rosa A. Shirley in Support of the Reply to the Responses Filed by Byron Tyghe Williams and T. Alan Owen to the Motion for Summary Judgment of the Joint Official Liquidators of Condor Insurance Limited with Regard to Count Two Against Byron Tyghe Williams and T. Alan Owen (the "Shirley Affidavit") (Adv. Dkt. 294-20), attached as Exhibit 10 to the Condor Reply.  Notably, the Supplementary Fu Declaration and the Shirley Affidavit incorporate by reference over 350 pages of exhibits, and altogether, the Condor Reply is well over 400 pages.

Local Rule 7056-1(3)(C) provides that the "movant may file a reply within 14 days after the response is served." MISS. BANKR. L.R. 7056-1(3)(C).  The Williams Response and the Owen Response were both filed on March 15, 2012, and, accordingly, the Condor Reply was timely filed by the Foreign Representatives on March 28, 2012.  However, attached to the Condor Reply is evidence presented to the Court for the first time.

Although Local Rule 7056-1(3)(C) allows a movant to file a reply, it does not expressly authorize or prohibit the submission of additional evidence in support of a motion for summary judgment.  *See* FED. R. BANKR. P. 9029 (local rules may not conflict with Federal Rules of Bankruptcy Procedure).  The presentation of new evidence by the Foreign Representatives is problematic if Williams and Owen are denied an adequate opportunity to refute it with controverting evidence because Rule 7056 of the Federal Rules of Bankruptcy Procedure apparently does not contemplate the filing of reply affidavits.  *See* Vais Arms, Inc. v. Vais, 383 F.3d 287, 292 (5th Cir.

2004) ("[W]e have not comprehensively identified all the circumstances under which a district court may rely on . . . evidence presented for the first time in a reply . . . .").

To cure the due process concerns, the Court could order Williams and Owen to file a sur-reply, but doing so would likely result in Williams and Owen re-filing the Williams Response and the Owen Response, which the Court has ruled inadmissible in this Opinion. Such a result would be untenable, because it would allow Williams and Owen to circumvent the summary judgment practices set forth in Local Rule 7056-1. The Court, therefore, determines that due process requires it to disregard both the Supplementary Fu Declaration and the Shirley Affidavit in their entirety in ruling on the Motion.

## Facts

As a result of the Court's holdings with respect to the untimely responses, affidavits, and briefs filed by Williams and Owen, and the affidavits filed by the Foreign Representatives as part of the Condor Reply, the Court's consideration of the Motion is reduced to the legal arguments set forth in the Condor Brief, and the evidence presented in the affidavits and exhibits attached to the Motion. The Court turns now to the facts based upon those affidavits and exhibits.

1.      Condor Insurance Limited ("Condor") was an insurance company domiciled in Saint Christopher (St. Kitts) and Nevis, West Indies. (Fu Decl. ¶ 12). Condor, now defunct, was primarily involved in the reinsurance business and issued special types of financial guarantees and surety bonds. (Fu Decl. ¶ 12). The Foreign Representatives seek the assistance of this Court in recovering assets of Condor that they allege were fraudulently transferred to Condor Guaranty, Inc. ("CGI"), Petroquest Resources, Inc. ("Petroquest"), Intercontinental Development and Investment Corporation ("IDIC"), Gymnogyps Management, Inc. ("Gymnogyps"), and Finpac Holdings, Inc. ("Finpac")

through the machinations of Harvey Milam ("Milam"), Condor's president.  Milam was allegedly assisted in his scheme to move Condor's assets beyond the reach of its creditors by Williams, Owen, and Ross N. Fuller ("Fuller").

2.      Milam was a director and the president of Condor. (Fu Decl. ¶ 13).

3.      Williams was the asset manager and preferred shareholder manager of Condor.  (Fu Decl. ¶ 17).  He is also the asset manager of CGI, president of IDIC, and a manager of Petroquest. (Fu Decl. ¶ 17).

4.      Owen was legal counsel for Condor.  (Fu Decl. ¶ 18).  He is also legal counsel for CGI and IDIC.  (Fu Decl. ¶ 18).  Fuller was Condor's consultant and/or broker.  (Fu Decl. ¶ 16).

5.      As of December 31, 2005, Condor's assets had a face value of over $315,000,000.00, according to its audited balance sheet.  (Fu Decl. ¶¶ 14, 23).  Of that amount, the financial statement noted that approximately $304,000,000.00 consisted of investments (including investments in oil and gas wells) and holdings in U.S.-based companies and securities publicly traded on U.S. exchanges. (Fu Decl. ¶ 23).

6.      According to Condor's correspondence in late October, 2006, and its financial statements, these assets included:

      a.      $107,834.47 in computer and office equipment;

      b.      $548,218.79 in assets owned by Aegis Shipping Limited (tools, tractors, cars, paintings, and sculptures);

      c.      $158,975.00 in rolling stock;

      d.      $1,040,500.00 in real estate;

      e.      $2,540,797.00 in cash and bank accounts;

  f. $6,983,241.00 in premiums for insurance and reinsurance contracts earned but not collected;

  g. $51,125,731.18 investment in oil and gas properties described as 100% of the working interest in 55 gas and oil wells, equipment, and gathering system located in Pleasants and Ritchie Counties, West Virginia, and 16 wells in Wood and Tyler Counties, West Virginia;

  h. $15,000,000.00 investment in Petroquest International, Inc., which is described as an ongoing investment for its 30% share of rights of way and product from 4000 acres of land owned by Petroquest International, Inc. and Middle Island Creek;

  i. $623,000.00 investment in Twin Fork Transportation, LLC, which is described as a 49% interest in Twin Fork, a pipeline and gas gathering transportation company;

  j. $224,887,500.00 in Petroquest preferred series C stock;

  k. $10,000,000.00 in Global Link technology preferred issue;

  l. $2,250,000.00 in Petroquest common shares (3,000,000 at 75 cents each);

  m. $180,000.00 in Petroquest preferred B shares; and

  n. $360,250.00 in Petroquest preferred B shares.

(Fu Decl. ¶ 24). In other correspondence, additional assets are described, including a $5,000,000.00 note receivable from Finpac, stocks held in an IFG Trust, and shares in Ashby Corporation. (Fu. Decl. ¶ 25).

**Condor's Fall**

7. Throughout 2005 and 2006, Condor was the subject of multiple lawsuits and collection efforts by its insureds and creditors. (Fu Decl. ¶ 19). Its ability to continue in business became uncertain. (Fu Decl. ¶ 19).

8. In 2006, Infineon Technologies AG ("Infineon"), a judgment creditor of Condor,

sought permission from the Eastern Caribbean Supreme Court, High Court of Justice of Saint Christopher and Nevis, Nevis Circuit (the "Nevis High Court") to present a winding-up petition against Condor. (Fu Decl. ¶ 20).

**CGI's Rise**

9.      In mid-November, 2006, CGI was incorporated and became a charter member of the Professional Benefits Association, a Bahamian Friendly Society.[5]  (Fu Decl. ¶ 28).  Fuller assisted Milam toward this end.  On October 10, 2006, Milam sent Fuller an e-mail stating:

> [N]ow that your Am Ex bill is taken care of let's look at how to do the Bahama society deal. I need an atty to issue us a legal opinion if your guy does not already have one, that this society is legal and how we merge Condor into it in such a way as to be able to get it back out.  I have until the first on [sic] November if all else fails here.  I would guess that this 'sale' would also give me 90 days breathing room concerning the claims issue as well.  We could send out notices of the sale to all the creditors etc. and really confuse the heck out of them. By then the SLS system will be up and running and it will be time to buy a boat.

(Fu Decl. ¶ 21).  There are other e-mails between Fuller and Milam dated from October 2006 to November 2006, about the Bahamian Friendly Society and the creation of CGI, the newly-formed Condor entity.  (Fu Decl. ¶ 22).

10.      In late October 2006, Milam and Williams corresponded about how to "divide" assets between Condor and CGI, "a new surety company."  (Fu Decl. ¶ 26).  Some of the assets that Williams agreed to "divide" were oil and gas interests.  (Fu Decl. ¶ 26).

---

[5] According to the Foreign Representatives, CGI enjoyed an important advantage by becoming a member of a "Friendly Society." (Am. Compl. ¶ 26 n.2).  "A Friendly Society is an association of members and can include various business entities.  It appears that those businesses can offer services only to members of the Friendly society.  A business that offers insurance within a Friendly society is apparently not subject to insurance regulations because the service can only be offered to members.  It appears that Condor Guaranty has been able to avoid insurance regulators with this maneuver, by simply having all of its insureds become members of the Friendly Society."  (Id.).

11.     On November 10, 2006, Milam sent Williams an e-mail entitled "Condor's set of problems" in which Milam described three main problems he was having with Condor.  (Fu Decl. ¶ 27).  Milam admitted that Condor did not have enough cash to pay the outstanding claims of its insureds and further told Williams, in relevant part, that:

> [T]he claimants are going directly to winding up procedures instead of registering their judgments or filing suit in Nevis to enforce their judgments.  There is a hearing on November 24 and written arguments due on 15 November, even if we lose on the 24th Jeffrey will appeal, but the damage will be done. I suggest we make the move now.  We can use the problems with the charter and the problem with the local registrar to justify the move and the problem with the charter to negotiate settlement. I will take a lot of heat and we will have to be prepared to fund the claims eventually . . . If we wait and lose the hearing and the appeal and then do not have money to pay the claims we lose the advantage of the positive spin for being the victim of the flawed system of Nevis.

(Fu Decl. ¶ 27).

12.     On November 15, 2006, the Professional Benefits Association, a Bahamian Friendly Society, granted CGI its charter.  (Fu Decl. ¶ 28).

13.     Condor and CGI share several key directors, officers, and advisors, as shown in the following table:

| Name | Condor | CGI |
|------|--------|-----|
| Harvey Milam | Director & President | President |
| Albert Milam | Vice-president | Vice-president |
| Brad Cates | Compliance Officer | Secretary and/or Treasurer |
| Tracy Brandy | Secretary & Office Manager | Director |
| Hope Milam | Communications Officer | Director |
| Daniel MacMullin | Director | Director |

| Byron Tyghe Williams | Asset Manager & Preferred Shareholder Manager | Asset Manager |
| T. Alan Owen | Legal Counsel | Legal Counsel |
| Ross N. Fuller | Consultant and/or Broker | Consultant and/or Broker |

(Fu Decl. ¶ 16).

### Transfers of Condor's Assets to CGI

14.     Shortly after receiving its charter, CGI opened bank accounts at United Bank and Bahamas Bank.  (Fu Decl. ¶ 29).  Condor's funds were subsequently transferred, either directly or indirectly, to CGI's bank accounts. (Fu Decl. ¶ 29).

15.     On November 19, 2006, many of Condor's assets were assigned or transferred to CGI including: "cash in the sum of $1,746,817.00; outstanding AR from New LTV valued at $500,000; outstanding AR from Gold Rock Creek/Stockton Fuller & Co. valued at $650,000; Petroquest restricted shares of stock totaling 3 million shares valued at $1,950,000; Petroquest Series B Convertible Preferred Stock; and a list of policies." (Fu Decl. ¶ 30).

16.     On November 24, 2006, the Nevis High Court granted Infineon permission to file the winding-up petition against Condor.  On November 27, 2006, Infineon initiated the insolvency proceeding against Condor by filing the winding-up petition (the "Winding-Up Petition") in the Nevis High Court.  (Fu Decl. ¶ 31).

17.     Notwithstanding Infineon's filing of the Winding-Up Petition against Condor,[6] the transfers of Condor's property continued and included, in particular, Condor's

---

[6] Section 382 of the Nevis Companies Ordinance (1999) provides:

interests in the oil and gas properties and in Petroquest. (Fu Decl. ¶ 32).

### Transfers of Interests in Oil & Gas Properties

18.     In December, 2006, Milam, Williams, IDIC, and Owen conspired to "concoct" a "foreclosure" of some of Condor's oil and gas properties situated in West Virginia and Ohio. (Fu Decl. ¶ 33). The "foreclosure" was in fact a voluntary assignment by Condor to IDIC. (Fu Decl. ¶ 33). (As previously noted, Williams is president of IDIC, and Owen was IDIC's legal counsel in the transaction). Shortly after the assignment, IDIC conveyed these same oil and gas properties to CGI. The documents, which were prepared by Owen, are dated as if the transaction occurred *before* November 27, 2006, but the public records and the correspondence between the parties demonstrate that the transfers actually occurred in December 2006, *after* the Winding-Up Petition had already been filed. (Fu Decl. ¶ 33).

19.     Condor transferred to IDIC 22 wells in Pleasants, Ritchie, and Tyler Counties in West Virginia that were subject to an unrecorded deed of trust allegedly granted by Condor in favor of IDIC in 2005 as collateral for a loan. (Fu Decl. ¶ 34). Milam consented to a transfer of these interests in lieu of foreclosure, and they were immediately transferred to CGI, Milam's new company. (Fu Decl. ¶ 34).

20.     Condor also transferred to IDIC, by assignment, 14 gas and oil wells in Wood

---

In a winding-up by the court, any disposition of the property of the company, including things in action, and any transfer of shares, or alteration in the status of the members of the company, made after the commencement of the winding-up, is, unless the [High Court] otherwise orders, void.

(Hare Aff. ¶ 45).

County, West Virginia, and interests in a pipeline and rights-of-way in Wood County, West Virginia, and Vinton County, Ohio. (Fu Decl. ¶ 34). Yet, there was no deed of trust granted by Condor in favor of IDIC with respect to those interests. (Fu Decl. ¶ 34).

21.     These oil and gas interests were worth millions of dollars, according to correspondence and documents. (Fu Decl. ¶ 34). Nevertheless, Milam consented to these transfers in lieu of foreclosure when Condor's purported debt to IDIC (allegedly secured by the interests) was only $727,273.68. (Fu Decl. ¶ 34).

22.     The value of the assets transferred by Condor to CGI during this time frame are evidenced by CGI's bloated balance sheet dated as of December 31, 2006. (Motion, Ex. H). By then, with the assistance of Williams and Owen, most of Condor's assets had been transferred to CGI, as reflected in Condor's 2005 balance sheet (Fu Decl. ¶¶ 14-15).

23.     On May 18, 2007, the Nevis High Court issued an order (the "Nevis Order") appointing the Foreign Representatives as joint liquidators to "take into their custody, or under their control, all the property and things in action (including any assets or books and papers) to which Condor is, or appears to be, entitled . . . . [and d]o all such other things as may be necessary for winding-up the affairs of the company and distributing its assets." (Bankr. Dkt. 35).

24.     The Foreign Representatives commenced a chapter 15 case in this Court by filing a Verified Petition for Recognition of Foreign Main Proceeding and Related Relief (Bankr. Dkt. 2) on July 26, 2007.

25.     The Court entered an Order Granting Recognition of Foreign Main Proceeding and Related Relief on August 21, 2007, pursuant to the provisions of 11 U.S.C.

§ 1517(b)(1).  (Bankr. Dkt. 35).

26.    On November 20, 2007, the Foreign Representatives initiated the Adversary by filing the Original Complaint (the "Original Complaint") (Adv. Dkt. 1) against CGI and Petroquest, seeking the Court's assistance in recovering Condor's assets under Nevis law. The Original Complaint named only two defendants, CGI and Petroquest, and alleged causes of action grounded in Nevis law.

27.    The value of the oil and gas wells that were not transferred to IDIC in December, 2006, was carried on Condor's balance sheet.  (Fu Decl. ¶ 35).  However, legal title to the wells appears actually to have been held by Petroquest, which then transferred the title to Owen in December 2007 (after the Adversary was commenced but before Owen was named as a defendant). (Fu Decl. ¶ 35).

28.    On April 21, 2008, the Foreign Representatives filed an Amended Complaint (the "Amended Complaint") (Adv. Dkt. 115) in which they added claims against the following individuals and entities: Williams, Owen, Milam, Fuller, IDIC, Gymnogyps, and Finpac.  The new defendants were added as a result of the information discovered by the Foreign Representatives regarding the transfer of assets from Condor to CGI.

29.    Williams, acting *pro se*, filed Byron Tyghe Williams' Original Answer (Adv. Dkt. 184) on August 12, 2010, and Byron Tyghe Williams' Supplemental Answer (Adv. Dkt. 188) on August 23, 2010.

30.    Owen, who is an attorney licensed to practice law in another state and who represents himself in the Adversary, filed T. Alan Owen's Original Answer (Adv. Dkt. 197) on September 13, 2010.

31.     The Motion was filed by the Foreign Representatives on February 9, 2012. In the Motion, the Foreign Representatives seek summary judgment against Williams and Owen on the dishonest assistance claims alleged in Count Two of the Amended Complaint. (Am. Compl. ¶ 56-62).     Specifically, they request damages arising from the alleged dishonest participation and knowing assistance that Williams and Owen provided Milam in his fraudulent transfers of Condor's assets and his breach of fiduciary duty to Condor.  As of February 2, 2012, the Foreign Representatives have recovered $1,008,430.00 and anticipate recovering an additional $330,000.00. (Fu Decl. ¶ 38).  Thus, according to the Foreign Representatives, Condor's damages are $314,313,191.00.  (Fu Decl. ¶ 38).

32.     On March 15, 2012, Williams filed the Williams Response and Williams Brief.  Also on March 15, 2012, Owen filed the nearly identical Owen Response and Owen Brief.

33.     The Foreign Representatives filed the Condor Reply on March 28, 2012.

### Discussion

The Court must determine if the evidence presented establishes the existence of a dispute as to whether Williams and/or Owen knowingly and dishonestly assisted Milam, who was then president of the now defunct Condor, in planning and executing improper transfers of Condor's assets, through IDIC and others,  to CGI in violation of Milam's fiduciary duty to Condor and/or its creditors and in violation of Nevis law.

### A.     Rule 56 Summary Judgment Standard

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates the summary

judgment standard established in Rule 56 of the Federal Rule of Civil Procedure.[7]  Summary

judgment is appropriate under Rule 56(a) when viewing the evidence in the light most

favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and

admissions, together with affidavits, if any, show that "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a);  *see* Celotex Corp.v. Catrett, 477 U.S. 317, 322- 23 (1986).

Defense of a proper summary judgment motion requires more from the non-moving

party than mere allegations or denials of his pleadings.  Rule 56(e) provides:

> If a party fails to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court may . . .
> consider the fact undisputed for purposes of the motion . . . .

FED. R. CIV. P. 56(e)(2).  Thus, once the moving party has made its required showing, the

non-moving party must go beyond the pleadings and by his own affidavits, depositions,

answers to interrogatories, or admissions demonstrate specific facts to establish there is a

genuine issue for trial.  Celotex, 477 U.S. at 324.  Ultimately, the role of the court is not to

weigh the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 590 (1992) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

---

[7] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of
Civil Procedure was amended, as of December 1, 2010.  The amendment did not change the
standard for granting summary judgment.  *See* FED. R. CIV. P. 56 advisory committee's note to
2010 Amendments ("The standard for granting summary judgment remains unchanged.").

**B.     Nevis Law**

The dishonest assistance claims of the Foreign Representatives are based on alleged violations of Nevis law.  The Federation of Saint Christopher (St. Kitts) and Nevis is an independent nation that was previously a colony of the United Kingdom.  Because Nevis is a foreign country, the Foreign Representatives shoulder the burden of proving to this Court the relevant principles of Nevis law.  Banque Libanaise Pour Le Commerce v. Khreich, 915 F.2d 1000, 1006 (5th Cir. 1990).  In determining foreign law, Rule 44.1 of the Federal Rules of Civil Procedure[8] states that "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  FED. R. CIV. P. 44.1.  To prove Nevis law, the Foreign Representatives offered the affidavit of William Richard Hare, a barrister of the Eastern Caribbean Supreme Court and a partner in the law firm of Forbes Hare in Tortola, British Virgin Islands.  (Hare Aff. ¶¶ 1-2).

Nevis law is based on English common law, augmented by local statutes (Hare Aff. ¶ 4). Cases rendered by the Nevis High Court are appealed to the Eastern Caribbean Court of Appeal and from there, to the Judicial Committee of the Privy Council in London (the "Privy Council") (Hare Aff. ¶ 5).  Thus, the decisions of the Privy Council are binding on the Nevis High Court.

---

[8] Rule 9017 of the Federal Rules of Bankruptcy Procedure makes Rule 44.1 of the Federal Rules of Civil Procedure applicable to adversary proceedings.  FED. R. BANKR. PROC. 9017.

The Nevis Order authorized the Foreign Representatives to bring this action on behalf of Condor.  In addition, § 398(1)(a) of the Nevis Corporations Ordinance (1999) provides as follows:

398.    (1) The liquidator in a winding-up by the court may with the sanction either of the court or of the committee of inspection

(a) bring or defend any action or other legal proceeding in the name and on behalf of the company . . .

(Hare Aff. ¶ 10).

As to the claims that are the subject of the Motion, English common law (and, thus, Nevis law) recognizes a cause of action against a third party who dishonestly assists a fiduciary in committing a breach of his fiduciary duty.  (Hare Aff. ¶ 31).  As a preliminary matter, such a cause of action requires proof of a breach of a fiduciary duty.   A fiduciary relationship is akin to the relationship that exists between a trustee and the beneficiary of a trust.  (Hare Aff. ¶ 16).  A director of a company, which is the position held by Milam at Condor, shares some of the same attributes of a trustee, especially with respect to assets that are in his hands or under his control.  (Hare Aff. ¶ 18).  A director has an irreducible fiduciary duty to act in good faith.  (Hare Aff. ¶ 18).  Such a duty is generally described as a director's duty to exercise his powers *bona fide* in the company's best interests.  (Hare Aff. ¶ 18).

Liability under Nevis law for dishonest assistance is premised on the dishonesty of the accessory to the fiduciary's wrong.  Whether the primary breach of duty by the fiduciary was the result of the fiduciary's own dishonest conduct is irrelevant to the liability of the accessory.  Instead, liability depends upon proof that his state of mind was dishonest in

assisting in the breach. His state of mind may consist in knowledge that people with normally-accepted standards of honest conduct would regard his assistance as dishonest. (Hare Aff. ¶¶ 31-32). According to the Privy Council, "[a]lthough a dishonest state of mind is a subjective mental state, the standard by which the law determines whether it is dishonest is objective. If by ordinary standards a defendant's mental state would be characterized as dishonest, it is irrelevant that the defendant judges by different standards." Barlow Clowes Int'l Ltd (In Liquidation) v. Eurotrust Int'l Ltd, [2005] UKPC 37. In other words, the fact that the accessory did not view his own conduct as dishonest does not render him beyond the *mens rea* element for liability. Finally, an accessory who dishonestly assists another in the breach of his fiduciary duty is liable for the losses resulting from such assistance. (Hare Aff. ¶ 35).

## C.    Dishonest Assistance Claims Against Williams and Owen

The transfers of the bulk of Condor's property that were initiated by Milam at a time when Condor was insolvent, or at least on the brink of insolvency, and so near the date when the Winding-Up Petition was filed, constituted transfers of assets in breach of Milam's fiduciary duty to Condor under Nevis law. In his capacity as a director and president of Condor, Milam owed Condor a fiduciary duty to act *bona fide* in Condor's best interests. The evidence presented by the Foreign Representatives, however, overwhelmingly showed that Milam ignored the best interests of Condor and its creditors and breached his fiduciary duty to Condor.

The evidence also established that Williams and Owen used CGI, IDIC, and other entities to assist Milam in planning and executing the transfers in breach of Milam's

fiduciary duty.  Williams and Owen knew that their participation in Milam's scheme was dishonest.  Specifically, they knew that Condor was insolvent or, at a minimum, that the transfers would deepen Condor's insolvency to the detriment of Condor's creditors.  By normally-accepted standards, such assistance was dishonest.

The Court reaches these findings based on the unrebutted evidence presented by the Foreign Representatives.  To avoid summary judgment under Rule 56, Williams and Owen had the burden of going beyond the denials in their answers to the Amended Complaint and presenting sufficient evidence setting forth facts demonstrating the need for trial.  They failed to do so in a timely manner.  Accordingly, the Court finds that Williams and Owen dishonestly assisted Milam in breaching his fiduciary duty to Condor in violation of Nevis law.  As a result, Williams and Owen are liable for the losses resulting from their dishonest participation in Milam's scheme.  The Court further finds that there is no genuine dispute that the amount of damages that the Foreign Representatives are entitled to recover is $314,313,191.00.[9]

---

[9] The Foreign Representatives ask the Court to hold Williams and Owen "jointly and severally" liable, together with other defendants against whom default judgments have been entered.  (Adv. Dkt. 271, 273, 275).  The Foreign Representatives did not offer proof of the scope of multiple liability under Nevis law.  In the absence of such proof, the Court declines to award the relief requested at this time.

**Conclusion**

The Court concludes that the Motion should be, and is hereby, granted in favor of the Foreign Representatives.   In accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure, the Court will enter a separate judgment in the amount of $314,313,191.00 against Williams and Owen consistent with this Memorandum Opinion.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated:  April 11, 2012